IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

SAFETY FIRST LABS, LLC,
a Florida limited-liability company,
    Plaintiff,

Case No.

v.

Judge:

MIKE MOTTA, an individual, and
FRANK SCIORINTINO, an
individual,
    Defendants

_____/

**COMPLAINT**

Through its undersigned counsel, Safety First Labs LLC ("Safety First" or the "Company") hereby files this Complaint against Mike Motta ("Motta"), and Frank Sciorintino ("Sciorintino") (collectively, Motta and Sciorintino are referred to as the "Defendants"), alleging:

**General Allegations**

1. Safety First is a Florida limited-liability company, with its principal place of business in Palm Beach County.

2. Mike Motta is a citizen of South Carolina.

3. Frank Sciorintino is a citizen of Texas.

4. Venue in this court is proper because the acts and omissions, transactions, and documents which give rise to the claims herein took place in Palm Beach County, Florida. The contractual agreements which each of the Defendants negotiated and executed with Safety First, and which are at issue in this case, include specific agreement that each Defendant submits to the jurisdiction and venue of the state or federal courts of Palm Beach County, Florida.

5. Pursuant to 28 USC §1332, this court has subject-matter jurisdiction, because there is complete diversity of the parties and the amount of damages sought exceeds $75,000.000.

1

6. All conditions precedent to the filing and prosecution of this action have occurred or been waived.

7. Safety First requests a trial by jury as to all claims and issues herein.

**Factual Allegations**

8. In February 2021, Safety First entered into an agreement BrioTech, Inc. ("BrioTech") whereby Safety First agreed to become BrioTech's exclusive, nationwide master distributor of BrioTech products including a disinfectant spray. As BrioTech's master distributor, Safety First agreed to create a nationwide network of regional and local distributors who would sell BrioTech's products to regional and local retail stores.

9. In February 2021, Defendants Sciorintino and Motta engaged in negotiations with Safety First for the purpose of developing the Safety First/BrioTech distributor network.

10. Each Defendant expressed to Safety First that their current employer "Novalent" was a failing business but that they possessed decades of experience in developing distributor networks in the same industry as BrioTech and as a result possessed substantial, established relationships with distributors throughout the United States.

11. Motta represented that he was a "senior leader in sales and marketing with international experience, having lived and worked in several regions across North America and Europe" and that he possessed "[n]early 30 years of chemical experience, serving a multitude of market sectors such as Food & Beverage, Education, Hospitality, Transportation, etc." His most recent position was as Chief Commercial Officer with "Novalent Ltd" where he claimed to have "[l]ed global sales and marketing and was responsible for 370% growth in revenue and improved profit margins from 51% to 83%", in only one (1) year.

12. Safety First communicated with each of the Defendants, together and alone, and also had telephone and email communications regarding the employment needs of Safety First and the Defendants' education, qualifications and experience.

13. In a telephone conference on February 25, 2021, Motta and Sciorintino told Safety First that, if hired, they would contract 29 new suppliers, i.e., distributors, in the first

quarter of their employment, with an average of 10 sales representatives per supplier, and which would generate $250,0000 per year, per supplier.

14. Safety First repeated to Motta, and wanted him to confirm, the performance representations that he and Sciorintino made on February 25, 2021. On March 1, 2021, Motta represented to Safety First:

> "If you want to make sure we're being real, I think 29 new distributors in Q1 is very aggressive. It takes a little time to get these distributors up and running. We like to train their sales teams on the product lines. I would say conservatively 12-15 in Q1. Another 10 in Q2. And we'll continue to add throughout the year. I think each distributor could potentially do $250K, but maybe better to go with a more conservative approach and use $150K per distributor in Year 1. And in Year 2, things will ramp up and we could certainly be looking at $250K to $500K each. Maybe even more with some."

15. Safety First pressed Motta and Sciorintino to commit that their "real" and "conservative" representations could be relied upon if Safety First hired them.

14. To that end, on March 3, 2021, Motta and Sciorintino created and presented to Safety First a "forecast" which Motta stated was a representation of his and Sciorintino's minimum performance if they were hired as the Company's President and Executive Vice-President. Sciorintino heard Motta's statements and did not object, amend, or change the representations.

16. During the Defendants' March 3rd presentation, Motta and Sciorintino substantially reduced the prior "real" and "conservative" representations with the inducement that Safety First could in fact rely upon the new, lower representations as minimum achievements of their performance if they were hired. These inducements included the representation that during the first 3 months of their employment, they would contract no less than 8 new distributors for Safety First, and that each distributor "will produce" an average spend amount of $10,000.00 of revenue per month for Safety First. Sciorintino heard Motta's statements, and did not object, amend, or change the representations.

17. Motta and Sciorintino also represented that they would contract on behalf of Safety First a minimum of 38 new distributors in the first 12 months of their employment which would

3

create an estimated $2.44 million dollars in revenue for the Company. Motta also stated that Safety First should expect a minimum of $7.3 million dollars in new revenue in their second year of employment. Sciorintino heard Motta's statements, and did not object, amend, or change the representations.

18.  On March 30, 2021, Motta signed an "Executive Employment Agreement" with Safety First. (attached and incorporated as Exhibit A). Motta was afforded the opportunity to negotiate the terms of this agreement and he did so.

19.  According to the Motta/Safety First agreement, Safety First employed Motta to be Safety First's "President" for twelve (12) months with an annual base salary of $225,000.00, plus benefits including 3 weeks of paid vacation during the first 12 months of his employ (with legal holidays considered, this effectively gave Motta in excess of $225,000.00 for 11 months of work).

20.  The agreement also provides for additional compensation to Motta of up to 10% of the Company's annual profits. However, the agreement also obligates Motta to bear up to 10% of the Company's annual losses. Motta's participation in the Company's profits and losses are determined in part by the terms and conditions of the Company's Operating Agreement, which was incorporated into the employment agreement.

21.  In return for the compensation, benefits, and liabilities of his employment as President, Motta agreed to perform duties that are consistent with the position of President of Safety First, as determined and delegated by the managing member of Safety First ("Designee").

22.  Motta also specifically agreed that he shall: i) expend substantially all of his working time for the benefit of Safety First; ii) devote his best efforts, energy and skill to the services of Safety First, and the promotion of Safety First's interests, and, iii) not take part in activities which would be known by Motta to be detrimental to Safety First, or its affiliates.

23.  On or about May 7, 2021, Sciorintino signed an "Executive Employment Agreement" with Safety First. (attached and incorporated as Exhibit B). Sciorintino was afforded the opportunity to negotiate the terms of this agreement and he did so.

24. According to the Sciorintino/Safety First agreement, Safety First employed Sciorintino to be Safety First's "Executive Vice- President" for twelve (12) months with an annual base salary of $160,000.00, plus benefits including 3 weeks of paid vacation during the first 12 months of his employ (with legal holidays considered, this effectively gave Sciorintino in excess of $160,000.00 for 11 months of work).

25. The agreement also provides for additional compensation to Sciorintino of up to 5% of the Company's annual profits. However, the agreement also obligates Motta to bear up to 5% of the Company's annual losses. Sciorintino's participation in the Company's profits and losses are determined in part by the terms and conditions of the Company's Operating Agreement, which was incorporated into the employment agreement.

26. In return for the compensation, benefits, and liabilities of his employment as President, Sciorintino agreed to perform duties that are consistent with the position of Executive-Vice President of Safety First, as determined and delegated by the managing member of Safety First ("Designee").

27. Sciorintino also specifically agreed that he shall: i) expend substantially all of his working time for the benefit of Safety First; ii) devote his best efforts, energy and skill to the services of Safety First, and the promotion of Safety First's interests, and, iii) not take part in activities which would be known by Motta to be detrimental to Safety First, or its affiliates.

28. When deciding to employ Motta and Sciorintino and execute their respective employment agreements, Safety First's Designee accepted and relied upon the representations of Motta and Sciorintino concerning their minimum performance, including that during the first 3 months of their employment, they would contract no less than 8 new distributors for Safety First, and that each distributor would produce an average of $10,000.00 of revenue per month. These are the duties Motta and Sciorintino agreed to perform in each of their employment agreements.

29. After execution of the Defendants' employment agreements, Safety First's Designee delegated the oversight responsibility of Motta and Sciorintino's employment to Safety First's Chief Managing Officer. The Defendants' employment duties did not change.

30. However, during the three (3) months after the execution of employment agreements with Safety First, Motta and Sciorintino produced nothing and undermined Safety First's relationship with BrioTech.

31. Contrary to their pre-contract minimum sales representations to Safety First, Motta and Sciorintino regularly attempted to excuse their non-performance during conference calls with Safety First and BrioTech with assertions that the market was satiated with similar product, and that there was an overabundance of product already purchased, or available for purchase, such that the new sales which SafetyFirst and BrioTech expected were impossible.

32. These excuses by Motta and Sciorintino evidence their knowledge that their pre-contract representations of minimum sales were knowingly false.

33. During their employ, Safety First paid Motta a total of $70,634.64 in compensation, as well as employer taxes. During this period of time, Safety First paid Sciorintino a total of $42,153.87, in compensation, as well as $1363.65 per month for the cost of health insurance coverage for him and his family, and employer taxes.

34. As the result of Motta's and Sciorintino's failure to perform, BrioTech terminated the master distribution agreement with Safety First. This caused Safety First to lose no less than $9.74 Million Dollars in revenue according to the Defendants' own expectations which they presented to Safety First when enticing Safety First to hire them.

35. During the Defendants' employment, Safety First incurred substantial costs in its efforts to build the Safety First/BrioTech nationwide distributor network. These costs are in addition to the compensation and benefit expenses provided to the Defendants by Safety First. As a result of the Defendants' failure to perform, Safety First suffered a loss for the tenure of the Defendants' employment which is not expected to be remedied in spite of Safety First's efforts to do so, because of the BrioTech termination also caused by the Defendants.

36. During their employment, Safety First regularly implored each Defendant to perform according to their employment duties and responsibilities and offered to further assist and accommodate the Defendants as needed. Safety First's efforts included a joint

accommodation with BrioTech - after BrioTech terminated its master distributor contract with Safety First- whereby BrioTech gave SafetyFirst an opportunity to offer any distributor a "BOGO" deal whereby if the distributor agreed to purchase one pallet of BrioTech product, BrioTech would give the distributor another pallet.

37. Defendant Sciorintino found one distributor to accept this offer in early September 2021, however, Sciorintino did not charge the distributor transportation fees, which forced Safety First to pay the costs. Sciorintino did not have the authority to waive the fees, nor the authority to bind SafetyFirst for these fees, and did not inform Safety First of his waiver of the fees before contracting with the distributor. As a result, Safety First suffered a loss and was forced to pay transportation costs of $3,229.00.

38. Safety First offered to keep Motta and Sciorintino employed if they re-negotiated their agreements. Motta and Sciorintino then ceased communications with Safety First. Motta and Sciorintino went "AWOL" for nine (9) days and did not communicate with or respond to Safety First efforts to communicate with each of them. This conduct amounted to an intentional and voluntary abandonment of their employment and termination of the employment agreements by each of the Defendants.

39. On September 29, 2021, Safety First sent to each of the Defendants, via an overnight delivery service and consistent with the terms of each employment agreement, notices that their employment was terminated as a result of their job abandonment as well as their failure to perform.

40. Shortly thereafter, both Defendants retained lawyers and delivered letters claiming to terminate their employment agreements with Safety First and demanding additional monies as if the Defendants were entitled to a guarantee of 12 months of compensation and benefits regardless of their failure to perform and the losses suffered by Safety First as a result.

## LEGAL COUNTS

### Count 1: Breach of Contract (Michael Motta)

41. Safety First adopts each of the preceding allegations within paragraphs 1-40 as if they are fully realleged herein.

42. Safety First entered into a contract with Defendant Motta, attached as Exhibit A.

43. Safety First performed all material obligations, conditions and duties owed Motta pursuant to the contract.

44. Defendant Motta breached the contract by failing to perform the material duties and obligations he owed to Safety First, including the failure to cause the contracting with any distributor for the sale of any product for which he was hired to do, during the 6 months after he executed his employment agreement and received from Safety First in excess of $70,634.64 in compensation.

45. Safety First has been damaged by Motta's breach.

WHEREFORE, Safety First demands judgement against Michael Motta for Breach of Contract, and an award of all legal and equitable damages to which it is entitled as a matter of law, attorney's fees pursuant to Section 448.08, Fla. Stat., taxable costs, and all other relief which this Court may deem appropriate under the circumstances of this case.

### Count 2: Breach of Contract (Frank Sciorintino)

46. Safety First adopts each of the preceding allegations within paragraphs 1-40 as if they are fully realleged herein.

47. Safety First entered into a contract with Defendant Sciorintino attached as Exhibit B.

48. Safety First performed all material obligations, conditions and duties owed Sciorintino pursuant to the contract.

49. Defendant Sciorintino breached the contract by failing to perform the material duties and obligations he owed to Safety First, including the failure to cause the contracting with any distributor for the sale of any product for which he was hired to do, during the 6 months

after he executed his employment agreement and received from Safety First in excess of $42,153.87 in compensation and benefit costs.

50. Safety First has been damaged by Sciorintino's breach.

WHEREFORE, Safety First demands judgement against Frank Sciorintino for Breach of Contract, and an award of all legal and equitable damages to which it is entitled as a matter of law, attorney's fees pursuant to Section 448.08, Fla. Stat., taxable costs, and all other relief which this Court may deem appropriate under the circumstances of this case.

### Count 3: Breach of the Duty of Good Faith and Fair Dealing (Michael Motta)

51. Safety First adopts each of the preceding allegations within paragraphs 1-40 as if they are fully realleged herein.

52. Safety First entered into a contract with Defendant Motta, i.e., the employment agreement attached as Exhibit A. There exists in the contract an implied covenant of good faith and fair dealing, the purpose of which is to protect the reasonable expectations of the contracting parties.

53. Safety First did all, or substantially all, of the significant things that the contract required.

54. All conditions required for Motta's performance occurred.

55. Motta's acts and omissions unfairly interfered with Safety First's receipt of the contract's benefits.

56. Motta's conduct did not comport with Safety First's reasonable contractual expectations under that provision of the agreement which sets forth Motta's employment duties, including without limitation, the minimum sales representations made by Motta, relied upon by Safety First, and designated by Safety First to Motta as Motta's employment duties. In addition, Motta abandoned his employment.

57. Safety First has been harmed by Motta's conduct.

WHEREFORE, Safety First demands judgement against Mike Motta for Breach of the Implied Covenant of Good Faith and Fair Dealing, and an award of all legal and equitable damages to which it is entitled as a matter of law, attorney's fees pursuant to Section 448.08, Fla. Stat., taxable costs, and all other relief which this Court may deem appropriate under the circumstances of this case.

**Count 4: Breach of the Duty of Good Faith and Fair Dealing (Frank Sciorintino)**

58.     Safety First adopts each of the preceding allegations within paragraphs 1-40 as if they are fully realleged herein.

59.     Safety First entered into a contract with Defendant Sciorintino, i.e., the employment agreement attached as Exhibit B.  There exists in the contract an implied covenant of good faith and fair dealing, the purpose of which is to protect the reasonable expectations of the contracting parties.

60.     Safety First did all, or substantially all, of the significant things that the contract required.

61.     All conditions required for Sciorintino's performance occurred.

62.     Sciorintino's acts and omissions unfairly interfered with Safety First's receipt of the contract's benefits.

63.     Sciorintino's conduct did not comport with Safety First's reasonable contractual expectations under that provision of the agreement which sets forth Sciorintino's employment duties, including without limitation, the minimum sales representations made by Motta, relied upon by Safety First, and designated by Safety First to Sciorintino as Sciorintino 's employment duties.   In addition, Sciorintino abandoned his employment.

64.     Safety First has been harmed by Motta's conduct.

WHEREFORE, Safety First demands judgement against Frank Sciorintino for Breach of the Implied Covenant of Good Faith and Fair Dealing, and an award of all legal and equitable

damages to which it is entitled as a matter of law, attorney's fees pursuant to Section 448.08, Fla. Stat., taxable costs, and all other relief which this Court may deem appropriate under the circumstances of this case.

### Count 5:  Declaratory Judgment

65.     Safety First adopts each of the preceding allegations within paragraphs 1-40, as if they are fully realleged herein.

66.     This Count is authorized by 28 U.S.C. §2201, and/or §86.031, Fla. Stat.

67.     An actual controversy exists between Safety First and the Defendants concerning the interpretation and application of the Defendants' employment agreements.

68.     The interpretation and application of the agreements determines material facts upon which the contractual rights of Safety First and the contractual obligations of Defendant Motta and Defendant Sciorintino depends.

69.     The interpretation and application of the agreements which is consistent with the language and intent of all parties is adverse to the interpretation and application of the agreements put forth by Defendant Motta and Defendant Sciorintino.

70.     The controversy arises from the following language within each of the Defendants' employment agreements:

> 2. Duties.
>
> During the Employment Period, Executive will serve as [job title] and
> perform such duties as are consistent with Executive's position which shall, from time to time, be reasonably delegated or assigned to Executive by the Company's Managing Member's Designated Representative, Robert Stillman ("Designee"). Executive shall: i) expend substantially all of his working time for the Company; ii) devote his best efforts, energy and skill to the services of the Company, and the promotion of its interests; and iii) not take part in activities which would be known by Executive to be detrimental to the best interests of the Company, or any affiliate thereof.
> ….
>
> 14. Entire Agreement, Waiver and Modification.
>
> Other than the Operating Agreement, this Agreement contains the entire understanding between the Parties with respect to the subject matter of this Agreement and supersedes

all prior oral or written communication, negotiations, understanding or agreements regarding the subject matter of this Agreement….

71. The employment duties "as are consistent with Executive's position" and which "shall, from time to time be reasonably delegated or assigned" by Safety First's Managing Member, to each Defendant are not defined or identified in the agreements.

72. The specific employment duties of each Defendant as assigned by Safety First's Managing Member are not memorialized in the Agreements.

73. At all times relevant, including prior to executing the Agreements and afterward, it was the understanding and agreement of Safety First and each Defendant that the Defendants' employment duties were as promised by the Defendants in the document created by the Defendants and titled "Forecast". Therein, and in conversations to Safety First in furtherance of the Defendants' efforts to have Safety First employ them and execute the employment agreements, the Defendants represented that they would achieve, at a minimum, the specific sales results in specific periods of time.

74. Prior to executing the employment agreements, Safety First's Managing Member assigned to Motta and Sciorintino, jointly, the duty to achieve at a minimum, the specific sales results in specific periods of time as set forth in the document created by the Defendants.

75. Safety First seeks a declaratory judgment that as a matter of fact:

    a. before the employment agreements were executed, Safety First's Managing Member assigned to Motta and Sciorintino, jointly, the duty to achieve the specific sales results in specific periods of time as set forth in the document created by the Defendants; and/or,

    b. because Safety First's Managing Member assigned to Motta and Sciorintino, jointly, the duty to achieve the specific sales results in specific periods of time as set forth in the document created by the Defendants before the employment contracts were signed, those duties are terms and conditions of each of the Defendants' employment agreements; or,

    c. if Safety First's Managing Member assigned to Motta and Sciorintino, jointly, the duty to achieve the specific sales results in specific periods of time as set forth in the document created by the Defendants before the employment contracts were signed, those duties are terms and conditions of each of the Defendants' employment agreements.

  76. The Defendants contend that paragraph 14 of the agreements prohibits the conclusion that the specific sales results as assigned by Safety First's Managing Member are terms and conditions of their employment agreed to prior to the execution of the agreements because those terms are not specified or described into the agreements.

  77. The Defendants' contention leaves each agreement without a material term., i.e., the duties which each Defendant agreed to in consideration for the employment term, compensation and benefits provided by Safety First.

  78. Alternatively, the Defendants' contention renders the employment agreements ambiguous because the Defendant's employment duties that were expected and agreed upon by the parties when the agreements were signed are unclear and uncertain.

  79. Alternatively, the specific employment duties assigned by Safety First's Managing Member to Motta and Sciorintino prior to and after the execution of the Agreements, is not the subject matter of the Agreements. The parties specifically agreed that such duties will be assigned by the Managing member from time to time, therefore intentionally excluding that subject matter from the Agreements.

  80. Thus, Safety First alternatively seeks a declaratory judgment that:

  (d) if paragraph 14 of the employment agreements prohibits consideration of the specific minimum sales results as terms and conditions of the Defendants' employment agreements at the time of their signing, then:

  (e) the employment agreements are void and unenforceable for lacking a material term, i.e., the duties of each Defendant agreed to in consideration for the employment term, compensation and benefits provided by Safety First; or,

(f) the employment agreements are inherently ambiguous and therefore subject to extraneous evidence for interpretation and conclusion of what were the employment duties of each Defendant expected and agreed upon by the parties when the agreements were signed.

81. Alternatively, Safety First seeks a declaratory judgment that:

(g) the specific employment duties assigned by Safety First's Managing Member to Motta and Sciorintino prior to and after the execution of the Agreements, is not the subject matter of the Agreements. The parties specifically agreed that such duties will be assigned by the Managing Member from time to time, therefore intentionally excluding that subject matter from the Agreements.

WHEREFORE, Safety First respectfully demands and respectfully requests that the Court declare the judgment of facts and law requested within this Count for Declaratory Judgment.

## Count 6: Fraudulent Inducement (Michael Motta)

82. This Count is pled in the alternative, and dependent upon the judgments rendered as requested in Count 5 of the Complaint.

83. Safety First adopts each of the preceding allegations within paragraphs 1-40, as if they are fully realleged herein.

84. Defendant Motta and Safety First entered into a contract, a copy is attached hereto as Exhibit A.

85. For the express purpose of inducing Safety First to agree to the terms and conditions of the contract, Defendant Motta intentionally made representations of material fact to Safety First which he knew he would not comply with. Those representations included, without limitation, the minimum sales results detailed in the document created by Motta, which Motta and co-Defendant Sciorintino presented to Safety First prior to contacting.

86. Motta knew those representations were relied upon by Safety First when Safety First decided to employ Motta, and made those representations the duties of Motta's employment before it executed Motta's employment agreement.

87. Safety First reasonably relied on Motta's representations when deciding to contract with Motta and provided to Motta the substantial compensation and benefits which it did throughout Motta's employ until Motta abandoned his job.

88. Safety First has been damaged by its reliance on Motta's false representations.

WHEREFORE, Safety First demands Judgment against Michael Motta for fraudulent inducement, and an award of any and all legal and equitable damages to which it is entitled as a matter of law and all taxable costs.

### Count 7: Fraudulent Inducement (Frank Sciorintino)

89. This Count is pled in the alternative, and dependent upon the judgments rendered as requested in Count 5 of the Complaint.

90. Safety First adopts each of the preceding allegations within paragraphs 1-41, as if they are fully realleged herein.

91. Defendant Sciorintino and Safety First entered into a contract, a copy is attached hereto as Exhibit B.

92. For the express purpose of inducing Safety First to agree to the terms and conditions of the contract, Defendant Sciorintino intentionally made representations of material fact to Safety First which he knew he would not comply with. Those representations included, without limitation, the minimum sales results detailed in the document created by Motta, which Motta and co-Defendant Sciorintino presented to Safety First prior to contacting.

93. Sciorintino knew those representations were relied upon by Safety First when Safety First decided to employ Sciorintino, and made those representations the duties of Motta's employment before it executed Motta's employment agreement.

94. Safety First reasonably relied on Sciorintino's representations when deciding to contract with Sciorintino and provided to Sciorintino the substantial compensation and benefits which it did throughout Sciorintino's employ until Sciorintino abandoned his job.

95. Safety First has been damaged by its reliance on Sciorintino's false representations.

WHEREFORE, Safety First demands Judgment against Frank Sciorintino for fraudulent inducement, and an award of any and all legal and equitable damages to which it is entitled as a matter of law and all taxable costs.

## Count 8: Conspiracy to Commit Fraud (Motta and Sciorintino)

96. This Count is pled in the alternative, and dependent upon the judgments rendered as requested in Count 5 of the Complaint.

97. Safety First adopts each of the preceding allegations within paragraphs 1-40, 84-88, and 91-95, as if they are fully realleged herein.

98. Defendants Motta and Sciorintino agreed with each other to make false representations to Safety First of their minimal sales performance over specific periods of time for the purpose of inducing Safety First to agree to the terms and conditions of their respective employment agreements. This conduct constitutes a conspiracy.

99. Having conspired with each other and knowing that their representations were false, but would be relied upon by Safety First to agree to the terms and conditions of their respective employment agreements, which in turn would harm Safety First, constitutes an unlawful act or a lawful act by unlawful means.

100. The knowingly false representations of minimal sales performance to induce Safety First to employ them, the execution of their employment agreements, and the acceptance of all compensation and benefits provided by Safety First pursuant to the employment agreements, is the doing of overt acts in pursuance of the conspiracy.

101. As a result of the Defendants' conspiracy to commit fraud, Safety First has been damaged.

WHEREFORE, Safety First demands Judgment against Michael Motta and Frank Sciorintino for conspiracy to commit fraud, and an award of any and all legal and equitable damages to which it is entitled as a matter of law and all taxable costs.

### Count 8: Unjust Enrichment (Mike Motta)

102. This Count is pled in the alternative.

103. Safety First adopts each of the preceding allegations within paragraphs 1-40, 84-88, and 91-95, as if they are fully realleged herein.

104. Safety First conferred a benefit on Motta, including without limitation, the substantial compensation and benefits provided to him during his employment with Safety First until he abandoned his job.

105. Motta voluntarily accepted and retained the benefits provided by Safety First.

106. Under the circumstances, it is inequitable for Motta to retain the benefits conferred upon him by Safety First.

107. Motta should repay to Safety First all compensation and the costs of all benefits which he accepted from Safety First, with interest, before he abandoned his employment.

WHEREFORE, Safety First demands judgment against Mike Motta for Unjust Enrichment, and award of and an award of any and all legal and equitable damages to which it is entitled as a matter of law and all taxable costs.

### Count 9: Unjust Enrichment (Frank Sciorintino)

108. This Count is pled in the alternative, and dependent upon the judgments rendered as requested in Count 5 of the Complaint.

109. Safety First adopts each of the preceding allegations within paragraphs 1-40, 84-88, and 91-95, as if they are fully realleged herein.

110. Safety First conferred a benefit on Sciorintino, including without limitation, the substantial compensation and benefits provided to him during his employment with Safety First until he abandoned his job.

111. Sciorintino voluntarily accepted and retained the benefits provided by Safety First.

112. Under the circumstances, it is inequitable for Sciorintino to retain the benefits conferred upon him by Safety First.

113. Sciorintino should repay to Safety First all compensation and the costs of all benefits which he accepted from Safety First, with interest, before he abandoned his employment.

WHEREFORE, Safety First demands judgment against Frank Sciorintino for Unjust Enrichment, and award of and an award of any and all legal and equitable damages to which it is entitled as a matter of law and all taxable costs.

>MurrayHudson, LLC, Attorneys at Law
>*Counsel for Safety First Labs, LLC*
>5550 Glades Road, #500
>Boca Raton, FL 33431
>(561) 549-9109
>murray@murrayhudsonlaw.com
>
>By: /s/ Murray Hudson
>G. Murray Hudson, Esq., FBN 788503